1
2
3
4
5
6
7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9
10   MARIAN WADE,                    )    NO. EDCV 04-01457 (Mc)
                                     )
11              Plaintiff,           )
                                     )    MEMORANDUM OF DECISION
12        v.                         )    AND ORDER IN A SOCIAL
                                     )    SECURITY CASE
13   JO ANNE B. BARNHART,            )
     Commissioner of the            )
14   Social Security Administration, )
                                     )
15              Defendant.           )
     _____)
16

17        The plaintiff, MARIAN WADE, filed the present action for review

18   of a final determination of the Commissioner of Social Security (the

19   "Commissioner") that the plaintiff is not disabled and not entitled to

20   Supplemental Security Income ("SSI") disability benefits.  For the

21   reasons set forth below, the court finds that the decision of the

22   Commissioner is not supported by substantial evidence.  The matter,

23   therefore, is remanded to the Commissioner for further proceedings.

24                              **BACKGROUND**

25        The plaintiff protectively filed an application for SSI

26   disability benefits under the Social Security Act (the "Act") on

27   October 23, 2002.[1] [Administrative Record ("AR") 78, 79-81.]  The

28   Commissioner denied the application initially and on reconsideration.

_____

        [1]A previous application filed in 1996 is not at issue.

1  [AR 53-55, 60-61.]  At the plaintiff's request, an administrative

2  hearing was held before Administrative Law Judge Jay E. Levine (the

3  "ALJ") on May 20, 2004. [AR 21-50.]  On June 21, 2004, the ALJ filed a

4  decision concluding that the plaintiff was not under a disability as

5  defined in the Act at any time through the date of the decision. [AR

6  11-17.]  The Appeals Council denied the plaintiff's request for review

7  of the ALJ's decision. [AR 4-6.]  The decision of the ALJ stands as

8  the final decision of the Commissioner.

9      Thereafter, the plaintiff filed the present action.  The

10  plaintiff and the Commissioner have consented to proceed before a

11  United States Magistrate Judge.  The parties have entered into a Joint

12  Stipulation setting forth their arguments.

13                          **STANDARDS OF REVIEW**

14      The court must sustain the findings of the Commissioner unless:

15  (a) they are not supported by substantial evidence in the record as a

16  whole; or (b) the Commissioner applied an improper legal standard.

17  See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human

18  Services, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence

19  means "more than a mere scintilla" but less than a preponderance.

20  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

21  L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human

22  Services, 846 F.2d 573, 576 (9th Cir. 1988).  "Substantial evidence"

23  is evidence a "reasonable mind might accept as adequate to support a

24  conclusion."  Richardson v. Perales, 402 U.S. at 402; Gordon v.

25  Secretary of Health and Human Services, 803 F.2d at 1072.

26      This court must review the record as a whole and consider adverse

27  as well as supporting evidence.  See Green v. Heckler, 803 F.2d 528,

28  529-30 (9th Cir. 1986).  Where evidence is susceptible of more than

1  one rational interpretation, the court must sustain the Commissioner's
2  decision.  <u>See</u> <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir.
3  1984).

4                    **THE FIVE-STEP SEQUENTIAL EVALUATION**

5       The Commissioner has established a five-step sequential
6  evaluation for determining whether a person is disabled.  First, the
7  Commissioner determines whether the person is engaged in "substantial
8  gainful activity."  If so, the Commissioner denies disability
9  benefits.  Second, if the person is not so engaged, the Commissioner
10 determines whether the person has a medically severe impairment or
11 combination of impairments.  If the person does not have a severe
12 impairment or combination of impairments, the Commissioner denies
13 benefits.  Third, if the person has a severe impairment, the
14 Commissioner determines whether the impairment meets or equals one of
15 a number of "listed impairments."  If the impairment meets or equals a
16 "listed impairment," the Commissioner conclusively presumes that the
17 person is disabled.  Fourth, if the impairment does not meet or equal
18 the "listed impairments," the Commissioner determines whether the
19 impairment prevents the person from performing past relevant work.  If
20 the person can perform past relevant work, the Commissioner denies
21 benefits.  Fifth, if the person cannot perform past relevant work, the
22 burden shifts to the Commissioner to show that the person is able to
23 perform other kinds of work.  The person is entitled to disability
24 benefits only if he or she is unable to perform other work.  See 20
25 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S.
26 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).
27 \\\
28 \\\

**FINDINGS OF THE ALJ**

The plaintiff was born January 13, 1953. [AR 79.]  The plaintiff has a high school education [AR 12, 25, 95] and past relevant work experience as a pharmacy messenger and home health care provider [AR 12, 28, 29, 98].  The plaintiff alleges that she has been unable to work since February 1, 2002, because of hepatitis C, spurs at the bottom of her feet and in her knees and ankles, lower back discomfort, dislocating shoulder, and problems with her wrist.  [AR 79, 89.]  The plaintiff also alleges depression. [AR 42.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  The ALJ found that the plaintiff had arthritis and drug and alcohol abuse, which are "severe" but that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. [AR 12, 16.] The ALJ found that the plaintiff's allegations regarding her limitations were not totally credible, and that the plaintiff retained the residual functional capacity to perform a significant range of light work activities. Specifically, the ALJ found that the plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently, standing and/or walking for six hours out of an eight-hour day, and sitting for six hours out of an eight hour day.  The plaintiff was also precluded from working at unprotected heights and around dangerous machinery.  The plaintiff was limited to occasional climbing of stairs, balancing, stooping, kneeling, crouching, and crawling. Mentally, the plaintiff was limited to working primarily with things rather than with people.  The ALJ found that the plaintiff's past relevant work as a pharmacy messenger did not require the performance

- 4 -

1  of work-related activities precluded by her residual functional

2  capacity.  Accordingly, the ALJ concluded that the plaintiff was not

3  prevented from performing her past relevant work and that, therefore,

4  the plaintiff was not under a "disability" as defined in the Act at

5  any time through the date of the decision. [AR 17.]

6                    **THE PLAINTIFF'S CONTENTIONS**

7       The plaintiff contends that the ALJ failed in his obligation

8  fully and fairly to develop the record and that the ALJ improperly

9  evaluated the treating physician's opinion of disability. [Joint

10  Stipulation at 3, 4.]

11                         **DISCUSSION**

12      The opinion of a treating physician is generally entitled to

13  greater weight than the opinion of a physician who has examined, but

14  not treated the claimant.  This is so because the treating physician

15  is employed to cure and has a greater opportunity to know and observe

16  her patient than a physician who only saw the claimant on one

17  occasion.  The opinion of an examining physician, in turn, is

18  generally entitled to greater weight than the opinion of a physician

19  who has not examined the claimant.  Andrews v. Shalala, 53 F.3d 1035,

20  1041 (9th Cir. 1995).  This is not to say, however, that the opinion

21  of even a treating physician is "necessarily conclusive as to either a

22  physical condition or the ultimate issue of disability." Magallanes

23  v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Rodriguez v.

24  Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989).  If, for example,

25  the opinion of a treating physician is rejected in favor of that of a

26  non-treating physician, and the opinion of the non-treating physician

27  is based upon independent clinical findings, the opinion of the non-

28  treating physician can constitute substantial evidence.  It is then

                              - 5 -

1   for the ALJ to resolve the conflict.  Andrews, 53 F. 3d at 1041.  If,
2   on the other hand, the opinion of the non-treating physician is based
3   upon the same clinical findings considered by the treating physician,
4   the ALJ must cite specific and legitimate reasons for rejecting the
5   treating physician's opinion.  Id.

6       The plaintiff's treating rheumatologist, Dr. Trina A. Joslin,
7   wrote on August 17, 2003, that she "deem[ed] the plaintiff incapable
8   of maintaining gainful employment due to the symptoms of her
9   arthritis." [AR 151.] The plaintiff notes that the ALJ rejected Dr.
10  Joslin's opinion because of the lack of objective evidence in support
11  of Dr. Joslin's assessment, including the lack of treatment records.
12  [Joint Stipulation at 3; see AR 14.] The plaintiff contends that,
13  before the ALJ rejected Dr. Joslin's opinion as unsupported, he should
14  have attempted to obtain Dr. Joslyn's report of her initial evaluation
15  of July 31, 2003, inasmuch as Dr. Joslin specifically referred to this
16  examination in her report of August 17.

17      This court agrees that if the ALJ believed that he needed to see
18  Dr. Joslin's treatment records, the ALJ should have recontacted the
19  physician to obtain this information.  20 C.F.R. § 416.912(e)(1)(When
20  the evidence received from the treating source is inadequate to allow
21  a determination, the Commissioner will first recontact the treating
22  source by, inter alia, requesting the treating source's records);
23  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(The ALJ, in
24  a Social Security case, has an independent obligation, even when the
25  claimant is represented, fully and fairly to develop the record).

26      However, a review of the record as a whole does not support by
27  substantial evidence the ALJ's reliance upon the lack of objective
28  evidence to reject Dr. Joslin's report, and, contrary to the ALJ's

- 6 -

finding, even absent the July 31, 2003, initial evaluation, Dr. Joslin outlined the findings which formed the bases of her opinions in her August 17, 2003, report. Thus, the ALJ's reasons for rejecting Dr. Joslin's opinion, while specific, are not legitimate.

In rejecting the assessment of Dr. Joslin, the ALJ noted that various x-rays of the shoulders, lumbar spine, and hips were relatively benign. [AR 14.] On the other hand, the ALJ also acknowledged that Dr. Joslin reported a positive rheumatoid factor and that the plaintiff had pain in multiple areas including the classic tender points of fibromyalgia. [AR 14, 151.] Dr. Joslin indicated that the plaintiff's symptoms were "classic" for inflammatory polyarthritis which included morning stiffness, symmetrical distribution, and involvement of the small joints of the hands. Dr. Joslyn noted, for example, that her examination of the plaintiff revealed enlargement of the radial carpal joints bilaterally. [AR 151.] Dr. Joslyn's findings of arthritis, therefore, are not necessarily discounted by lack of significant x-ray findings in the spine, shoulders or hips.

Dr. Joslin also specifically stated that the plaintiff's examination revealed more than twelve of the classic fibromyalgia tender points. [AR 151.] Again, the existence or severity of fibromyalgia cannot be discounted by the lack of significant x-ray findings or by the lack of other objective findings. Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001)("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and "the only symptom that discriminates between it and

other diseases of a rheumatic character" multiple tender spots, more
precisely 18 fixed locations on the body (and the rule of thumb is
that the patient must have at least 11 of them to be diagnosed as
having fibromyalgia) that when pressed firmly cause the patient to
flinch").

Therefore, Dr. Joslin's report of August 17, 2003, even absent
the July 31, 2003, initial evaluation, was not devoid of supportive
findings as the ALJ suggests.  These findings, moreover, are
substantially confirmed by the consultative examiner, Dr. Henry Lin,
who examined the plaintiff in March, 2004.  Dr. Lin, while finding
essentially normal ranges of motion, agreed with Dr. Joslin that the
plaintiff had inflammatory arthritis secondary to hepatitis C and that
the plaintiff had fibromyalgia. [AR 151, 184.] In making the diagnosis
of fibromyalgia, Dr. Lin reported that examination of the neck
revealed that the fibromyalgia points were tender to palpation.
Examination of the shoulders revealed tender fibromyalgia points, as
did examination of the elbows and wrists and hands.  Lower extremity
examination likewise revealed tender fibromyalgia points in the hips,
knees and ankles. [AR 182-83.] Dr. Lin found that the plaintiff had
twelve of the eighteen fibromyalgia tender points.  Thus, in looking
at the record as a whole, the ALJ's reliance upon the lack of
objective findings is misplaced, and his assessment that Dr. Joslin's
opinion is unsupported is not based upon substantial evidence.

The Commissioner, on the other hand, disputes the plaintiff's
claim that the sole reason the ALJ rejected Dr. Joslin's opinion was
the lack of objective findings. [Joint Stipulation at 5.]

The Commissioner argues, for example, that the ALJ rejected Dr.
Joslin's opinion because it is inconsistent with the evidence of

record. [AR 14.] Even assuming that this reason is sufficiently specific, it is not sufficiently legitimate. As support for her argument, the Commissioner relies upon the consultative reports of Dr. Ravinder Kurella and Dr. Lin.  The Commissioner contends that their evaluations contradict Dr. Joslin's findings and that it is for the ALJ to resolve the conflict.  Andrews, 53 F.3d at 1039.  However, Dr. Kurella's examination took place six months before Dr. Joslin's.  The lack of consistency between his assessment and Dr. Joslin's might support a change in the onset of the plaintiff's impairment, but it does not necessarily dispute Dr. Joslin's findings or her assessments six months later.

The Commissioner also points to Dr. Lin's failure to observe any arthritic findings in the hands.  While it is true that Dr. Lin, unlike Dr. Joslin, reported no enlargement of the radial carpal joints bilaterally, on the other hand, no consideration was given to the fact that Dr. Joslin is the only physician of the three who is a diplomate of the American Board of Rheumatology. [AR 151; compare AR 124-27, 180-84.] One of the considerations in evaluating medical opinion is not only the relationship the physician has to the patient as treating physician or examining physician but also the specialty of the physician.  20 C.F.R. § 416.927(d)(5)(The Commissioner "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist").

More significantly, while Dr. Lin's assessment did not include any arthritic findings in the hands, generally, as noted herein, Dr. Lin's evaluation findings were quite consistent with those of Dr. Joslin.  Dr. Lin did not dispute that the plaintiff suffered from

inflammatory polyarthritis, and he agreed with Dr. Joslin that this condition was secondary to the plaintiff's hepatitis C. [Compare AR 151, 184.] Dr. Lin likewise agreed with Dr. Joslin that the plaintiff had fibromyalgia, finding, as did Dr. Joslin, that the plaintiff had at least twelve of the eighteen fibromyalgia points. [Id.] Therefore, while opinions concerning the degree of impairment clearly differ, it is not at all clear that Dr. Lin's findings actually differ significantly from that of Dr. Joslin. This being the case, the difference in conclusion is what requires specific and legitimate reasons to disregard Dr. Joslin's assessment.  The difference in conclusion itself cannot serve as a specific and legitimate reason. Andrews, 53 F.3d at 1041 (Where nontreating physician's opinion contradicts that of the treating physician but "rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record").

     The Commissioner also notes that the ALJ cited Dr. Joslin's failure to outline the restrictions the plaintiff had in activities such as sitting, standing, walking, lifting, or stooping.  On the other hand, the ALJ never sought a medical source statement from Dr. Joslin.

     The Commissioner also suggests that because Dr. Joslin only saw the plaintiff briefly, "the record does not indicate a longitudinal treatment relationship which would warrant the 'treating physician' deference," citing 20 C.F.R. § 416.927(d)(2)(i). [Joint Stipulation at 7.] However, brief as Dr. Joslin's treatment might have been, Dr. Joslin saw the plaintiff at least as many times as did Dr. Kurella or

1    Dr. Lin, and 20 C.F.R. § 416.927(d)(2)(i) does not stand for the

2    proposition that because a treating physician did not see the

3    plaintiff for a long time, the examining physician's status is

4    elevated over that of the treating physician, especially where, unlike

5    Dr. Kurella or Dr. Lin, Dr. Joslin is a specialist rendering an

6    opinion in her field of specialization.

7        Accordingly, this court agrees with the plaintiff that the ALJ

8    failed properly to consider the opinion of Dr. Joslin.  The reasons

9    cited by the ALJ for rejecting Dr. Joslin's opinions are not

10   sufficiently specific and legitimate.  The ALJ's failure even to

11   include fibromyalgia as a medically determinable impairment in light

12   of Dr. Lin's corroborating report reflects an unsupported disregard of

13   Dr. Joslin's opinions and is not based upon substantial evidence.

14   This court further finds that the ALJ, if he felt that Dr. Joslin's

15   report was inadequate, should have recontacted Dr. Joslin for a copy

16   of the treatment notes and/or a medical source statement.

17       The record also reveals that the record is inadequately developed

18   concerning the plaintiff's psychiatric impairment and that the ALJ

19   failed to provide clear and convincing reasons for rejecting the

20   uncontroverted opinion of Dr. Charles Lester.

21       The medical evidence indicates that the plaintiff was referred by

22   her primary care physician to a psychiatrist in August, 2003.  The

23   diagnosis was of Major Depressive Disorder and severe panic attacks.

24   The plaintiff was prescribed Ativan, Zoloft, and Lexapro.  Findings

25   included depression, anxiety, and decreased concentration.  The name

26   of the physician is not shown.  [AR 150.] There is also a Psychiatric

27   Review Technique Form and a Medical Source Statement completed on

28   September 8, 2003, by Dr. Charles A. Lester. [AR 155-67.] Dr. Lester

essentially indicated that the plaintiff's condition met Listing 12.06 and equaled Listing 12.04. At first blush, the forms appear to have been completed by a State Agency physician [AR 167] having familiarity with the Listings, but the ALJ does not identify Dr. Lester as a State agency physician but as rather a physician whose assessment was submitted by the plaintiff's previous attorney.  It appears that the physician to whom the plaintiff was referred in August, 2003, and whose examination notes are in the record was Dr. Lester. In any case, Dr. Lester's assessment is uncontradicted.   Accordingly, the ALJ's rejection of this opinion must be supported by clear and convincing reasons.  Andrews, 53 F.3d at 1041.

The ALJ rejected Dr. Lester's opinion because:

1)   It was unaccompanied "by any objective evidence in support of the conclusion;"

2)   It did not indicate any restrictions;

3)   It is inconsistent with the evidence of record;

4)   There are no treatment notes submitted with the evaluation which gives the diagnosis or that supports the conclusion;

5)   There is no evidence that Dr. Lester even treated the plaintiff;

6)   The conclusion that the plaintiff is unable to work is unsupported and is on an issue reserved to the Commissioner.

These reasons, while numerous, are neither clear nor convincing.

First, Dr. Lester never concluded that the plaintiff could not work but rather completed a Mental Medical Source Statement in which he specifically indicated the degree of impairment in various work functions. [AR 164-67.] Thus, the ALJ's finding that Dr. Lester's conclusion was on an issue reserved to the Commissioner and that Dr.

Lester did not indicate any restrictions is not supported by the record.  On the other hand, the regulations specifically provide that the Commissioner "consider[s] opinions from medical sources on issues such as whether [the individual's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter."  20 C.F.R. § 416.927(e)(2).  Dr. Lester indicated that the plaintiff's impairment met Listing 12.06 and equaled Listing 12.04, an assessment specifically cited by the Commissioner as a valid medical opinion.

The ALJ's finding that Dr. Lester's conclusion is inconsistent with the other evidence of record is likewise hardly clear or convincing.  To the contrary, the record indicates that the plaintiff was prescribed Benadryl for anxiety by Dr. Joel Cheong, who referred the plaintiff for psychiatric evaluation [AR 134, 150], and her primary care physician in California continued to prescribe Benadryl and Lorazepam [see AR 181].  Otherwise, Dr. Lester is the only physician who provided a psychiatric report.

The ALJ's finding that there are no treatment notes accompanying Dr. Lester's assessment is also unsupported.  As indicated above, there is a treatment note dated August, 2003.  This treatment record indicates a diagnosis of Major Depressive Disorder and Panic Attacks, impairments specifically included in Listings 12.04 and 12.06.

The ALJ's expression of doubt whether Dr. Lester was a treating physician is likewise not clear or convincing.  There is no other report to contradict Dr. Lester.  Even if Dr. Lester were not a treating physician, the ALJ would still have had to cite clear and convincing reasons for rejecting his uncontroverted opinion.  Andrews, 53 F.3d at 1041.

1    Last, the lack of objective findings to reject a psychiatric

2  opinion is questionable.  As the court noted in <u>Sanchez v. Apfel</u>, 85

3  F.Supp.2d 986, 992 (C.D. Cal. 2000), <u>quoting</u> <u>Christensen v. Bowen</u>, 633

4  F. Supp. 1214, 1220-21 (N.D. Cal.1986) (quotation marks and citation

5  omitted):

6         [C]ourts have recognized that a psychiatric impairment is

7         not as readily amenable to substantiation by objective

8         laboratory testing as is a medical impairment and that

9         consequently, the diagnostic techniques employed in the

10        field of psychiatry may be somewhat less tangible than those

11        in the field of medicine. In general, mental disorders

12        cannot be ascertained and verified as are most physical

13        illnesses, for the mind cannot be probed by mechanical

14        devices in order to obtain objective clinical manifestations

15        of mental illness.... [W]hen mental illness is the basis of

16        a disability claim, clinical and laboratory data may consist

17        of the diagnoses and observations of professionals trained

18        in the field of psychopathology. The report of a

19        psychiatrist should not be rejected simply because of the

20        relative imprecision of the psychiatric methodology or the

21        absence of substantial documentation, unless there are other

22        reasons to question the diagnostic technique.

23        Accordingly, the ALJ failed to provide sufficiently specific and

24 legitimate reasons for disregarding the opinion of Dr. Joslin, and he

25 failed to cite clear and convincing reasons for rejecting the opinion

26 of Dr. Lester.  If the ALJ believed that Dr. Joslin's report and Dr.

27 Lester's assessment required substantiation by way of treatment notes,

28 \\\

the ALJ should have requested them in accordance with his obligation fully and fairly to develop the record.

Thus, the matter requires remand for re-evaluation both of the opinions of both Dr. Joslin and Dr. Lester.

## ORDER OF REMAND

The Court has reviewed the pleadings, Joint Stipulation of the parties, and the transcript of the record.  In accordance with the foregoing discussion, the magistrate judge finds that good cause has been shown for remanding the case to the Commissioner.

IT IS ORDERED that this case be remanded to the Commissioner of the Social Security Administration pursuant to sentence four of 42 U.S.C. section 405(g) for further administrative proceedings consistent with the reasons set forth herein.


Dated: February 2, 2006


                                    _____/s/_____
                                    JAMES W. McMAHON
                                    United States Magistrate Judge